**422**

## PEOPLE OF STATE OF ILLINOIS ex rel. SANKSTONE

v.

## JARECKI, County Judge et al. No. 53 C 1939.

United States District Court
N. D. Illinois, E. D.
Sept. 28, 1953.

George Yellen, Chicago, Ill., for plaintiff.

Ben Schwartz, Asst. Atty. Gen., Bernard J. Korzen, John F. Tyrrell and Vincent P. Flood, Asst. State's Attys., Chicago, Ill., for defendants.

CAMPBELL, District Judge.

Plaintiff styles his complaint as one "in the nature of a mandamus proceeding and for equitable relief." The complaint alleges in substance, that the plaintiff is a resident and citizen of the State of Illinois and of the United States, and a duly qualified and registered voter in the County of Cook and State of Illinois; that on August 17, 1953, plaintiff filed certain petitions with the Honorable Richard J. Daley, County Clerk of Cook County, Illinois; that these petitions entered the plaintiff as a new party candidate under the designation of Judicial

Non-Partisan Organization, as candidate for Judge of the Superior Court of Cook County, Illinois, for the full six-year term to be voted on at the judicial election to be held in Cook County on November 3, 1953; that these petitions conformed in all respects to the requirements outlined in the Illinois Election Code, Ill.Rev.Stat., Ch. 46, Sec. 10–2; that the nominating petitions were duly accepted and filed with the said Richard J. Daley, together with a certificate of candidacy of plaintiff, accepting the nomination; and that on August 21, 1953, one Leah M. Wiley filed certain objections to the nominating petitions.

The complaint further alleges that the Sheriff of Cook County failed to notify plaintiff of the time and place the electoral board would meet to hear the objections to his petitions, as provided by Illinois statute; that the Chairman of the electoral board failed to notify the members of the board and the plaintiff of the hearing on the petitions and the objections within the time specified by statute; that a hearing was held before the electoral board on August 27, 1953, tions to plaintiff's petitions, but that the hearing was held improperly because of the absence of Richard J. Daley, one of the members of the board; that the hearing was commenced over plaintiff's objection, and then continued for further hearing to August 31, 1953; that at this further hearing, the full electoral board was present; that plaintiff then objected that the hearing was illegally constituted, since Richard J. Daley had not been present at the first hearing, and, in the alternative, since the board did not convene within the time specified by the Illinois Election Code; that the hearing was nevertheless held by the board, and its decision was announced on September 2, 1953.

The decision of the electoral board is attached to and made part of the complaint. The board found that "the Nominating Petition of the plaintiff does not contain a sufficient number of signatures to equal at least five percent (5%) of the total number of persons who vot-

ed at the next preceding General Election in Cook County." On the basis of this finding, the board sustained the objections to plaintiff's nominating petitions, and ordered that plaintiff's name should not be printed on the ballot at the judicial election to be held on November 3, 1953.

The complaint also contains several lengthy descriptions of the Illinois Election Code, with particular emphasis upon Section 10–2 of Chapter 46, which prescribes the manner in which new parties may be formed within the State. The complaint alleges that this section of the Code is unconstitutional.

Plaintiff concludes his complaint with a prayer for declaratory and injunctive relief. He asks this court to declare that he has been denied due process of law, in that his constitutional right to become a candidate for judge of the Superior Court of Cook County has been violated; that Section 10–2 of Chapter 46 of the Illinois Statutes is unreasonable, arbitrary and unconstitutional; and that the electoral board acted without due process of law and without jurisdiction. Plaintiff asks that an interlocutory injunction be issued, restraining the enforcement of the decision of the Cook County Electoral Board, and the printing of the ballots for the judicial election of November 3, 1953, and that a three-judge court be convened to pass upon the constitutionality of Section 10–2, Chapter 46 of the Illinois Election Code.

■ The matter is now before the court on plaintiff's motion for a temporary restraining order and the convening of a three-judge district court. Section 2281 of the Judicial Code, 28 U.S.C.A. § 2281, provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not

be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

This Section was added to the Judicial Code in 1948, and it is substantially similar to former Section 380 of Title 28. This former section has been construed by the Supreme Court on several occasions, and the Court has repeatedly held that Congress did not intend to prescribe the convening of a three-judge court whenever a complainant attacked the validity of a state statute. In short, an application for a three-judge court must be accompanied by a complaint which alleges a substantial federal question.

 In Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 1934, 292 U.S. 386, 54 S.Ct. 732, 734, 78 L.Ed. 1318, the Court stated:

"The three-judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay. That procedure, designed for a specific class of cases, sharply defined, should not be lightly extended. * * * The limitations of the statute would be defeated were it enough to keep three judges assembled that a plaintiff could resort to a mere form of words in his complaint alleging that the suit is one to restrain action of state officers, with no support whatever in fact or law."

Again, in California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 866, 82 L.Ed. 1323, the Court made clear that it is "the duty of a district judge, to whom an application for an injunction restraining the enforcement of a state statute or order is made, to scrutinize the bill of complaint to ascertain whether a substantial federal question is presented, as otherwise the provision for the convening of a court of three judges is not applicable." And, the court continued, "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject."

With that language in mind, the court turns to the *instant complaint*. Plaintiff seeks to challenge the constitutionality of Section 10–2 of Chapter 46, Illinois Election Code. That Section prescribes the manner in which new political parties may be formed within Illinois; it provides (in part) as follows:

"Any * * * petition for the formation of a new political party throughout the State, or in any such district or political subdivision, as the case may be, shall declare as concisely as may be the intention of the signers thereof to form such new political party in the State, or in such district or political subdivision; shall state in not more than five (5) words the name of such new political party; shall contain a complete list of candidates of such party * * * and, if such new political party shall be formed for the entire State, shall be signed by not less than twenty-five thousand (25,000) qualified voters: Provided, that included in the aggregate total of twenty-five thousand (25,000) signatures are the signatures of two hundred (200) qualified voters from each of at least fifty (50) counties within the State. If such new political party shall be formed for any district or political subdivision less than the entire State, such petition shall be signed by qualified voters equaling in number not less than five (5) per cent nor more than eight (8) per cent of the number of voters who voted at the next preceding general election in such district or political subdivision in which such district or political subdivision voted as a unit for the election of officers to serve its respective territorial area * * *."

Plaintiff alleges in his complaint that he sought the formation of a new political

party within Cook County, and that the electoral board found that his nominating petitions did not contain the signatures of at least 5% of the next preceding general election in Cook County, as required by Section 10–2. Plaintiff now complains that the requirements of Section 10–2 are arbitrary, unreasonable, and unconstitutional.

Section 10–2 has been challenged in the federal courts before; and it has survived the challenge. In 1948, a three-judge court was convened in this district on the application of several persons who were candidates of a new political party in Illinois known as the Progressive Party. An Illinois electoral board had held that the nominating petitions of these candidates did not include the signatures of 200 qualified voters from each of at least 50 counties within the State, as required by Section 10–2. The three-judge court, after a review of the facts, entered these conclusions of law:

"1. The provisions of § 2 of Article 10, § 10–2, c. 46, Ill.Rev.Stat. 1947, requiring for a valid nominating petition at least two hundred signatures of qualified voters from each of at least fifty counties is not repugnant to, nor in violation of any provision of the Constitution of the United States, nor does it contravene § 18, Article II of the Constitution of Illinois.

"2. This Court is without jurisdiction to examine or inquire into the decision of the Illinois State Officers' Electoral Board * * * and to hold that the Board's decision is null and void."

The three-judge court then refused to grant the requested injunctive relief. MacDougall v. Green, D.C.Ill., 80 F.Supp. 725, 727. The denial of the injunction was then affirmed by the Supreme Court, Id., 335 U.S. 281, 69 S.Ct. 1, 2, 93 L.Ed. 3. The Supreme Court felt that:

"It would be strange indeed, and doctrinaire, for this Court, applying such broad constitutional concepts as due process and equal protection of

the laws, to deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former. The Constitution—a practical instrument of government—makes no such demands on the States."

There were other questions in the record then before the Supreme Court; these same questions are raised in the instant complaint. The Supreme Court characterized those questions as "purely local * * *, having no federal constitutional aspect."

■ In the opinion of the court, the MacDougall decision is controlling here. True, plaintiff is not concerned with that portion of the statute which requires state-wide candidates of new parties to gather signatures in each of fifty counties (although he asserts the illegality of this requirement in his complaint); rather, petitioner is concerned only with the requirement that he have the signatures of a certain percentage of voters within Cook County. But if the MacDougall case dictates that the one requirement is valid, certainly it tells us that the less rigorous requirement which concerns plaintiff is also valid. In the light of the MacDougall opinion, no court of this district, however constituted, may strike down Section 10–2.

Under the Illinois Election Code, the decision of an electoral board "shall be final." Ch. 46, § 10–10, Ill.Rev.Stat. Since the complaint fails to allege facts which would warrant holding that the decision of the board was arbitrary or capricious, that decision will not be disturbed. The board found that plaintiff failed to satisfy the requirements of Section 10–2; and the MacDougall case holds that Section 10–2 is constitutional. It is therefore the duty of this court to hold that the complaint fails to allege a substantial federal question, and the court shall not take those steps neces-

sary to convene a three-judge district court.

For the reasons stated, plaintiff's motion for a temporary restraining order is denied, and the complaint is dismissed.