**SEATRAIN LINES, INC. and Sea-Land Service, Inc., Plaintiffs,**
and
**The Port of New York Authority, Intervening-plaintiff,**
v.
**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**
and
**The Atchison, Topeka & Santa Fe Railway Company, Monsanto Company, et al., Intervening-defendants.**

**Civ. A. No. 692–63.**

United States District Court
D. New Jersey.
July 31, 1964.

Stryker, Tams & Dill, Newark, N. J., for plaintiffs, Walter F. Waldau, Newark, N. J., Edward R. Neaher, and S. S. Eisen, New York City, of counsel.

David M. Satz, Jr., U. S. Atty., by Martin Tuman, Asst. U. S. Atty., for the Government.

H. Neil Garson, Assoc. Gen. Counsel, and Atty., for Interstate Commerce Commission.

Lum, Biunno & Tompkins, Newark, N. J., for intervening defendants, Peter W. Thomas, Newark, N. J., and Edward A. Kaier, Philadelphia, Pa., of counsel.

Shanley & Fisher, Newark, N. J., for intervening defendant Monsanto Company, Harold E. Spencer, Chicago, Ill., of counsel.

WORTENDYKE, District Judge.

To an understanding of the nature and status of the instant proceeding, a brief review of prior proceedings in this case is necessary.

Plaintiffs Seatrain Lines, Inc. and Sea-Land Service, Inc., both corporations of the State of New Jersey, hereinafter Seatrain, are common carriers by water, certificated by the Interstate Commerce Commission, hereinafter Commission, and subject to Part III of the Interstate Commerce Act, 49 U.S.C. § 901 et seq. Seatrain Lines, Inc. renders rail-water-rail service by transporting freight, principally in railroad box cars, on ocean-going vessels. Sea-Land Service, Inc. transports freight in demountable truck-trailers on its ocean-going vessels. The services rendered by both plaintiffs are in direct competition with all-rail serv-

ice. Railroads participating in the rail-water-rail routes of shipments via Seatrain also participate in competing all-rail routings.

On August 20, 1963 the railroads competing with Seatrain filed with the Commission a supplement to their Southwestern Lines Freight Tariff 355 (ICC 4435) to become effective 12:01 a. m. on August 23, 1963. Under this tariff supplement all-rail rates on the movement of synthetic plastics were reduced (for minimum quantities of 70,000 pounds) from Texas City, Houston, Baytown, Freeport, Longview, North Seadrift, Orange and Williams, Texas to the New York metropolitan area (New York City, New York, and Edgewater, Elizabeth, Jersey City, Newark and Secaucus, New Jersey) and Blackstone, Boston and East Hampton, Massachusetts, and Providence and Woonsocket, Rhode Island.

The complaint in this action, filed August 22, 1963, alleges that the all-rail rates proposed in the tariff supplement aforesaid are below the fully distributed costs of providing all-rail service; that Seatrain is the low cost carrier; and that "except on traffic from Texas City to the New York metropolitan area" the proposed all-rail rates would leave Seatrain with the alternative either of foregoing its traffic in plastics or reducing its rates to such levels as would produce revenues insufficient to cover its costs. The complaint further alleges that the proposed new rates were originally filed to become effective on May 13, 1960, but that in March of that year the present plaintiffs requested the Commission to suspend such proposed rates, and opposed the railroads' application for approval, pursuant to 49 U.S.C. § 4(1). On April 3, 1960 the Commission suspended the proposed rates pending investigation. A Commission Examiner, after hearing, recommended a report and order that the "Fourth Section" application be denied and that the proposed rates be cancelled. On July 24, 1961 Division 2 of the Commission issued its report, upholding the Examiner's determination, and finding

that (1) Seatrain was the low cost carrier; (2) the new all-rail rates would not return their fully distributed costs, and as such were not justified; (3) approval of the proposed new rates at the low level of the rates applicable over water routes would induce traffic to leave the water carriers who would be compelled to file countering reductions to protect their important segment of traffic; and (4) cancellation of the proposed new rates would foster the National Transportation Policy. On August 21, 1961, the Commission stayed the effectiveness of its said order of July 24, 1961 pending hearing upon the railroads' petition for reconsideration which was granted on July 18, 1963. By order of Division 2 of the Commission, filed July 26, 1963, its prior decision of July 24, 1961 was reversed, upon a holding that the new all-rail rates were just and reasonable and not otherwise unlawful, and the railroads' "Fourth Section" application was granted.

The plaintiffs in this action contend that the decision of the Commission's Division 2 on reconsideration erroneously found the new all-rail rates to be just and reasonable, and that its grant of "Fourth Section" relief violated Section 4 of the Act. They allege that the decision of the Commission in that regard was arbitrary, an abuse of discretion and unsupported by substantial evidence, within the meaning of 5 U.S.C. § 1009(e).

Predicating jurisdiction upon 49 U.S.C. § 17(9), 5 U.S.C. § 1009 and 28 U.S.C. § 1336, plaintiffs prayed that a three-judge court be convened as required by 28 U.S.C. § 2284; that the Court enjoin, annul and set aside the Commission's report and order on reconsideration made July 26, 1963; and that preliminary injunctive relief be granted by the Court to maintain the status quo pending review of the action of the Commission complained of.

Upon the filing of the verified complaint in this action, together with supporting affidavits, the writer of this opinion, to whom the case was assigned

on August 22, 1963, directed the defendants United States of America and Interstate Commerce Commission to show cause why the Court should not order that the action and motion for preliminary injunction be heard by a three-judge court, and why the preliminary injunctive relief sought by the plaintiffs should not be granted. The order to show cause also provided that the operation of the Commission's order on reconsideration dated July 26, 1963 be stayed pending the return of the order to show cause. By way of supplement to the order to show cause, a further order was made by the writer on September 26, 1963, which provided that the action and the motion of the plaintiffs for preliminary injunction therein be heard and determined by a three-judge court, pursuant to a prayer of the complaint, which Court had been constituted by Chief Judge Biggs of the Third Circuit Court of Appeals, pursuant to my request, by his order dated August 28, 1963.

By its order of September 13, 1963, the Commission rejected respective petitions of the plaintiffs here, the Port of New York Authority and Houston Port Bureau, Inc., and directed, on its own motion, that the proceedings entitled "Investigation and Suspension Docket No. 7344 Plastics from Texas to the East, Fourth Section Application No. 36076 Plastics from Texas to Official Territory" be reopened for further hearing by the Commission. Upon the representation made by the parties, including the Port of New York Authority as intervening-plaintiff, that the Commission had taken the action last aforesaid, and upon a written stipulation dated September 30, 1963, entered into in behalf of all of the parties and filed herein October 2, 1963, the writer, acting for the Three-Judge Court which had been constituted as aforesaid, made and entered an order, dated October 2, 1963, staying this action pending further order of the Interstate-Commerce Commission after rehearing in the reopened administrative proceeding before it. The same order continued the

stay of the operation of the Commission's previous order of July 26, 1963 until thirty days after service upon the plaintiffs of the Commission's order following rehearing or until the further order of this Court.

On July 31, 1964, plaintiffs applied to the writer upon presentation of an affidavit from which it appeared that the railroads, which had previously intervened in this cause as defendants, had filed with the Commission a tariff of reduced rates on synthetic polyethylene plastics from Texas City, Texas to Kenilworth, New Jersey, proposed to become effective August 1, 1964 at 12:01 a. m., pursuant to Supplements 3 and 4, Southwestern Lines Freight Tariff 17, ICC 4568, and that the Commission had refused to suspend these proposed rates pending further administrative proceedings pursuant to the stipulation and order in this cause dated October 2, 1963. It was further disclosed by the affidavit that the proposed reduced rates related to the same commodity, and were operative from one of the same points in Texas, as the rates previously pending before the Commission, and that the destination for the more recently proposed reduced rates was located in the same area as that to which the previously proposed rates were to apply. Plaintiffs further represented, in their most recent application, that the proposed reduced rates to Kenilworth, New Jersey, were designed for Monsanto Chemical Company, one of the intervenors in this action, and that, if these rates were to take effect, that shipper would promptly shift its business from Seatrain to the rail carriers in order to take advantage of the rate reductions, thus requiring Seatrain either to forego all of such traffic or reduce its rates to levels sufficiently below those of the proposed all-rail discount rates in order to participate in the business. Such a reduction would, plaintiffs contend, produce revenues insufficient to cover Seatrain's water service cost. Upon the instant application, an order to show cause was made on July 31, 1964, direct-

ing the defendants and intervening defendants to show cause why the order of October 2, 1963, continuing in effect the order of August 23, 1963, staying and restraining the operation of the Commission's order of July 26, 1963, should not apply to and restrain the taking effect of the proposed reduced rates for all-rail transportation from Texas City, Texas to Kenilworth, New Jersey, as filed with the Commission to become effective at 12:01 a. m. on August 1, 1964. The order to show cause also directed that, pending the return thereof, and until the further order of this Court, the defendants and intervening defendants be temporarily restrained from establishing and maintaining such newly filed reduced rates. By consent order of August 6, 1964, the hearing on the return of the aforesaid order to show cause together with the restraint therein was continued to August 11, 1964. Upon said continued return date the undersigned, sitting as a single judge of this Court, heard argument in behalf of the respective parties, at the conclusion of which decision was reserved.[1] This opinion embodies that decision.

Upon the opening of the Commission's argument, its attorney advised the Court that the railroads had filed a cancelling supplement with the Commission, to become effective August 20, 1964, "which cancels out completely the rates which are the subject of this Court's prior restraining order."[2] Plaintiffs insisted, however, that the railroads, by withdrawing their requests for approval of rates by the Commission, could not preclude the plaintiffs from filing, in the form of a supplemental pleading,[3] allegations em-

1. During the oral argument, the defendant United States of America advised the Court that it had opposed the institution of the volume discount rate to Monsanto before the Interstate Commerce Commission on the plastics from Texas City to Kenilworth for reasons presently not before this Court, and upon grounds not present in this case, because the Government feels that the Commission may have been mistaken in not suspending the rates and that the refusal has prejudiced Seatrain. However, the Government did not subscribe to the contentions of Seatrain in this action, and accordingly did not participate in the argument on the return of the order to show cause presently under consideration.

2. Exhibit D–1 in evidence on the show cause hearing is a Notice of cancellation, ICC 4435, Supplement 143 to Southwestern Lines Freight Tariff 355 cancelling Supplement 139, and states: "The provisions proposed herein which were suspended by order of the Interstate Commerce Commission in I. & S. Docket 7344 (Plastics—Texas to East), and subsequently postponed are hereby withdrawn and cancelled."

Exhibit D–2 in evidence on the hearing is a letter from the Assistant General Counsel of The Pennsylvania Railroad Company to the Secretary of the Commission, dated August 6, 1964, captioned "I. & S. Docket No. 7344—Plastics from Texas to East." That letter states in pertinent part that the railroads in the present court action "have initiated steps to withdraw and cancel all of the rates which are under investigation in I. & S. Docket No. 7344; and in view of this, now request the Commission to terminate, all of the proceedings in that docket. These railroads also ask that Fourth Section Application No. 36076— Plastics from Texas to Special Territory, which was embraced in the proceedings in I. & S. Docket No. 7344, be withdrawn and that any Fourth Section relief which may have been granted or approved in that application be cancelled. In view of the above, the railroads do not desire to participate in the reopened proceedings and therefore will not circulate any materials on the circulation date above referred to [October 12, 1964]."

3. The Port of New York Authority was permitted to intervene as a plaintiff and filed a complaint in this action. The railroads interested in the reduced rates intervened as defendants and filed answer to the complaint of the intervening plaintiff. The pending order to show cause was allowed upon affidavits presented in behalf of Seatrain Lines, Inc.; but the complaint of the plaintiffs has not been amended or supplemented by the inclusion or addition of allegations supportive of the relief sought with respect to the last filed proposed rates from Texas City, Texas to Kenilworth, New Jersey.

Monsanto Company, a Delaware corporation, has filed an answer to the order

bodying their contentions that the rates most recently filed between Texas City, Texas and Kenilworth, New Jersey, should not be approved, but that their taking effect should be restrained. The railroads contended that this action has become moot by the withdrawal of the tariff which was under reconsideration by the Commission, and which were the only rates covered by the complaint in this action. The plaintiffs, on the other hand, contend that the issue presented by the railroads' most recent application respecting the tariff between Texas City and Kenilworth has not become moot. We pass this question of mootness at the moment, in order that we may first scrutinize the question of jurisdiction.

■ It is the principal contention of the defendants that this Court, whether acting through a single Judge or three Judges, is without jurisdiction to stay the taking effect of a tariff of rates filed with the Commission, or to require the Commission to stay the taking effect of such tariff. In support of this contention the defendants rely principally upon 49 U.S.C. § 15(7) and 5 U.S.C. § 1009(e), as construed in Luckenbach Steamship Co., Inc. v. United States, D.C.Del.1959, 179 F.Supp. 605, vac. and rem. 1960, 364 U.S. 280, 80 S.Ct. 1611, 4 L.Ed.2d 1719. Where agency action is committed to agency discretion, there may be no judicial review. Luckenbach, supra; United States v. Wiley's Cove Ranch, 8 Cir. 1961, 295 F.2d 436, 440–441; Schilling v. Rogers, 1960, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478;

Panama Canal Co. v. Grace Line, Inc., 1958, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed. 2d 788; Z. & F. Assets Realization Corp. v. Hull, 1941, 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288; Heiner v. Diamond Alkali Co., 1933, 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921; Sellas v. Kirk, 9 Cir. 1952, 200 F.2d 217, cert. den. 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366; Lehr v. United States, 5 Cir. 1943, 139 F.2d 919.

■ A threshold question requires resolution in the instant proceeding. The complaint in this action prayed for the constitution of a Three-Judge Court, which was duly constituted in accordance with that prayer. This Court's order of October 2, 1963 was filed by a single Judge, acting in behalf of that Three-Judge Court, in implementation of the stipulation of September 30, 1963, which had been then entered into by all of the parties then before the Court. The order to show cause of July 31, 1964 and order of August 11, 1964, permitting Monsanto to intervene, were also signed by the same single Judge, but acting independently of the previously constituted Three-Judge Court. The arguments on return of the order to show cause were heard by the same single Judge. 28 U.S.C. § 2284(3) authorizes the District Judge to whom an application for an interlocutory judgment is made to grant a temporary restraining order to prevent irreparable damage. The pending order to show cause contains such a temporary restraint; but subsection (4) of that Section requires the concurrence of two

---

to show cause of July 31, 1964. In that answer, Monsanto alleges that it is a shipper of polyethylene plastics from Texas City, Texas to Kenilworth, New Jersey, but has no interest in and takes no position with respect to the allegations of the original complaint herein. Monsanto states that it appears "for the sole purpose of contesting the order to show cause and the temporary restraining order entered herein on July 31, 1964." It further alleges that the rates upon the commodity which it ships from Texas City to Kenilworth published in Supplements 3 and 4 to Southwestern Lines Freight Tariff 17, ICC 4568, in no

way relate to or proceed from the order of the Commission of July 26, 1963, which was restrained by this Court's order of August 23, 1963. Finally, Monsanto pleads that the question of whether the rates between Texas City and Kenilworth should be permitted to become effective has become committed by statute, 49 U.S.C. § 15(7), to the discretion of the Commission and that this Court lacks jurisdiction to enjoin or temporarily restrain the effectiveness of such rates. Monsanto prays that the temporary restraining order of July 31, 1964 be vacated.

Judges in granting the application. However, Section 2284(5) empowers any one of the three Judges of the Court to "perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure." But a single Judge may not "hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing." In Eastern States Petroleum Corp. v. Rogers, etc., 1960, 108 U.S.App.D.C. 63, 280 F.2d 611, cert. den. 1960, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187, 28 U.S.C. § 2284(1) and (5) were considered and the Court (280 F.2d pp. 615–616) cited and followed Jacobs v. Tawes, 4 Cir. 1957, 250 F.2d 611; as authority for the rule that "a single judge may dismiss an application for a three-judge court if the district court, no matter how constituted, lacks jurisdiction. * * * Chief Judge Prettyman, in an earlier phase of * * * [the then pending] litigation, reached the same conclusion. 1959, 105 U.S.App.D.C. 219, 265 F.2d 593. As these decisions make clear, the provision of § 2284 precluding single-judge dismissal, along with the other procedural requirements of that section, becomes operative only after a three-judge court is convened. This is implied from the introductory passage of § 2284 * * * * " In Oklahoma Gas Co. v. Oklahoma Packing Co., 1934, 292 U.S. 386, 391–392, 54 S.Ct. 732, 78 L.Ed. 1318, the Supreme Court said, in discussing the three-judge procedure: "[W]hen it becomes apparent that the plaintiff has no case for three judges, though they may have been properly convened, their action is no longer prescribed, and direct appeal here must fail as well in this case as where the plaintiff does not press his injunction, * * or his constitutional attack." The Court of Appeals for the District of Columbia Circuit, in Lion Manufacturing Corp. v. Kennedy, 1964, 330 F.2d 833, held (pp. 840–841) that " * * * Section 2284 is addressed to the manner in which a three-judge court must function once it has been convened. It assumes jurisdiction in the District Court over the controversy, and its provisions come into play only when that jurisdiction exists. It remains for the judge who is asked to convene a three-judge court to determine whether jurisdiction exists in the District Court; and if he properly concludes there is no jurisdiction, his power to dismiss the complaint, as well as to deny the motion to convene a three-judge tribunal, is in no way circumscribed by Section 2284." For the foregoing interpretation, the Court cites Eastern States Petroleum, supra, and Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794. In the latter case the plaintiff's request for a three-judge court was denied and the single District Judge to whom the request was made simply retained jurisdiction pending determination of constitutional issues in the State courts. On certorari, the Supreme Court held that a three-judge court should have been convened and pointed out (370 U.S. p. 715, 82 S.Ct. p. 1296) that: "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

When the Three-Judge Court in this case was constituted as aforesaid, the complaint disclosed prima facie a cause of action requiring a three-judge court for its adjudication. It is now urged that, by reason of the withdrawal and cancellation by the railroads of the rates referred to in the complaint, the cause of action alleged therein has become moot. The new issue, which should have been presented by way of a supplemental or a separate new complaint, but which was tendered in the form of affidavits, evoked the temporary restraining order

embodied in the order to show cause, which is clearly within the authorization of subdivision (3) of Section 2284. Upon the return of the order to show cause, for the first time it appeared, from exhibits presented in evidence, that this action, insofar as the complaint is concerned, had become moot, and that this Court, whether consisting of a single Judge or of three Judges, is without jurisdiction to grant the relief which the present movants seek.

The matter before me at this time is an order to show cause why relief not prayed for in the complaint should not be granted to the plaintiffs in the pending action, which has been referred to a Three-Judge Court under the statute. Section 2284(5) authorizes me, as a single Judge, to "perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure." I have treated the foregoing quoted language as authorization for the disposition of the order to show cause by me, as a single Judge, despite the fact that a Three-Judge Court has been constituted in this case.

I conclude that the relief which the plaintiffs presently seek by way of order to show cause is not within the jurisdiction of this Court because the refusal of the Interstate Commerce Commission to suspend the rates most recently filed by the intervening railroad carriers is a matter exclusively within the sound discretion of the Commission and not susceptible of review by this Court. 49 U.S.C. § 15(7); I. C. C. v. Inland Waterways Corp., 1943, 319 U.S. 671, 63 S.Ct. 1296, 87 L.Ed. 1655; Benson v. United States, 1960, 108 U.S.App.D.C. 201, 281 F.2d 34, and cases cited *ante*. Whether this action should be dismissed for mootness I leave to the Three-Judge Court. See Mills v. Green, 1895, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293.

The order to show cause and restraint therein contained entered on July 31, 1964, is discharged and dissolved.

Submit order.