ABRAHAM EPSTEIN and Another, Appellants, *v.* PHILIP GOSSEEN and Others, Respondents.

First Department, March 18, 1932.

*Charles G. F. Wahle,* for the appellants.

*Harry Kopp* of counsel [*Kopp, Markewich & Null,* attorneys], for the respondents.

McAvoy, J. The suit here was brought to recover commissions by real estate brokers who alleged that they procured the exchange of real estate situated on the Shore road in Brooklyn for certain realty in Freeport, L. I., which was the property of plaintiffs' proposed purchaser. At the trial the complaint was dismissed as to the two causes of action contained in the complaint.

The proof of plaintiffs showed that the defendant Gosseen, on behalf of himself and the other defendants, employed the plaintiffs to procure a purchaser for the Shore road property. The plaintiff Abraham Epstein was engaged prior to November 1, 1926, and the plaintiff Hyman Epstein was employed about March 15, 1927. The services were to be paid for, if a sale was brought about or an exchange satisfactory to the defendants was arranged, by a commission in the sum of $14,000.

Plaintiffs procured Freeport Shores, Inc., the owner of lots at Freeport, to enter into a contract for the exchange of their lots for defendants' Shore road property in Brooklyn, and the time and place for signing the formal contract was fixed for a day certain at the office of an attorney in New York. After the closing of the contract had been adjourned from time to time, the defendants refused to consummate the exchange, and plaintiffs, asserting that they had complied with all the conditions necessary to be performed by them under their contract of employment as brokers, claim their commission of $14,000 because of the default.

In a second cause of action, plaintiffs allege that defendants again employed them to procure a purchaser for the same lots after the events recited in the first cause, and that they did so procure a person who was prepared to purchase on defendants' terms, one Frederick Small, whom they proposed to defendants as a purchaser and defendants again refused to carry out the contract to convey to Small, because they were obligated by a contract theretofore made to convey to another purchaser called the Ridge Boulevard Building Corporation, and that because of this default and under

the terms of a specific agreement, defendants owe the plaintiffs a commission of $4,000, $1,000 of which had been paid, and the balance is the subject-matter of the second claim.

The defenses are that the defendant corporation had agreed to sell the property referred to in the complaint to the Ridge Boulevard Building Corporation in November, 1926, the title closing being set for June 27, 1927. Before that time the Ridge Boulevard Building Corporation was adjudged a bankrupt and the trustee in bankruptcy, who succeeded to the assets of the Ridge Boulevard Building Corporation, took over the equitable title to the lots in question and conveyed the interest as trustee to a company known as the Resku Holding Corporation.

Defendants alleged that plaintiffs were aware of the agreement between the defendant corporation and the Ridge Boulevard Building Corporation, and proposed the exchange with such knowledge of the existence of that contract.

As to the second cause of action, they allege that plaintiffs, knowing of the contract with the Ridge Boulevard Building Corporation, procured the prospective purchaser, Small, to enter into a contract with the defendant corporation, and that thereafter the Resku Holding Corporation, the transferee of the trustee in bankruptcy, having demanded a deed of the premises, frustrated the transaction with Small. It is alleged that the agreement for brokerage in the Small transaction obliged defendants to pay plaintiffs the sum of $4,000, of which $1,000 was paid; the $3,000 balance it is alleged was not to become due if title did not close, and hence, since that event occurred, they were not further liable for commissions.

There was also pleaded a release and discharge by plaintiffs of defendants from any liability for the commissions asserted to be due in the complaint.

We conclude that the evidence would have justified findings of the jury that the parties agreed on the terms of the contract of exchange alleged in the first cause of action; that time and place were set for the making of the formal contract; that defendants did not appear, although plaintiffs' proposed purchaser was present and had the necessary willingness and readiness to make the contract; that on the adjourned date defendants again failed to appear, but notified plaintiffs that they could not carry out the contract because of the existing agreement with the Ridge Boulevard Building Corporation, and that no contention was ever made throughout the negotiations after the prospective purchaser had been procured that plaintiffs had not earned their $14,000 commission, and that defendants were not liable therefor.

We deem these facts make out a *prima facie* case as to the first cause of action. The inability of the defendants to enter into a contract for the exchange of their real estate because of the previous existing contract to sell the same lots would not defeat plaintiffs' right to recover for commissions earned by them unless they were informed that their compensation was contingent upon that contract being canceled, abandoned or surrendered. The first cause, however, was dismissed by the trial judge because it was alleged that the Freeport Shores, Inc., had not complied with section 20 of the Stock Corporation Law.

Section 20 of the Stock Corporation Law recites: " Voluntary sale of franchise and property. A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of the holders of record of two-thirds of its outstanding shares entitled to vote thereon may sell and convey its property, rights, privileges and franchise, or any interest therein or any part thereof; but franchises within the State may be sold only to a domestic corporation. Before such a sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called pursuant to section forty-five."

We do not think that section 20 of the Stock Corporation Law has any application to a contract for the sale of real estate of a corporation whose business is the sale of parcels of realty.

The Freeport Shores, Inc., the proposed purchaser, was a realty corporation engaged in the sale of its own real estate. It was disposing of lots owned by it in such quantities as it could sell to purchasers, and it was engaged at the time of the contract of brokerage in question in endeavoring to dispose of its realty holdings through these brokers, and was not losing its corporate existence through the transfer of this property. Its business was to sell real estate lots, and section 20 of the Stock Corporation Law has no application to the sale of commodities or articles which constitute the business of the corporation. It would not seem that it would be necessary for a realty corporation, whenever it sold a lot of its land or a quantity of lots, to call the stockholders together to give power to the corporation to transact its regular business of sale. There is a distinction between the sale by a corporation of its products in the ordinary course of business, and the sale by it of its assets in the business, including its good will, franchises of the corporation or an integral part of its business, which is the basis of its activity and without which the corporation cannot function.

The consent of the stockholders under section 20 is not required for the ordinary sale by a corporation in the regular course of

business. This contract proposed to be entered into by the Freeport Shores, Inc., and the defendants was not inclusive of good will, franchises to do business, or any basic department of the company's business, without which it could not function; in fact, it indicated a continuation of its business in the sale of lots, transferring its sales activities from the shore lots at Freeport to the Shore road lots in Brooklyn, which it was about to acquire.

Plaintiffs' first cause of action should, therefore, not have been dismissed.

We also conclude that the second cause of action was improperly dismissed on the ruling of the trial judge that he was unable to conceive of the defendants having made the same because of its improvident nature.

Plaintiffs were employed under their proof in that cause of action to find a purchaser for these identical lots at the agreed commission of $4,000, which sum was fixed because of defendants' acknowledgment of their indebtedness to plaintiffs for commissions for procuring the exchange of defendants' lots for the Freeport lots described in the first cause of action.

This $4,000 was to be earned apart and independent of the $14,000 commission alleged to be due under the transactions set out in the first cause of action. Plaintiffs show that they procured one Frederick Small as a purchaser, ready to enter into a contract on defendants' terms, and the defendants again refused to carry out their agreement on account of the pre-existing contract with the Ridge Boulevard Building Corporation, and since plaintiffs had performed all of their duties in so procuring a purchaser, they were entitled to the balance of the commissions set at $4,000, upon which $1,000 had been paid. At the time of the Small transaction, plaintiffs, Small and the defendants knew of the rights accrued to the Ridge Boulevard Building Corporation's bankruptcy trustee or his transferee. The proof is that Small and the plaintiffs contracted with the contingency of this outstanding claim in the Ridge Boulevard Company.

Plaintiffs assert in their proof that the contract that they were employed to procure was the contract which the parties finally agreed upon, and that all of the parties had knowledge of the outstanding lien or equitable title in favor of the bankruptcy trustee or his purchaser or transferee. They make proof that the contract that they were hired to obtain was the contract which they procured, and whether it was probable or improbable that such was the contract was a question of fact for the jury.

We conclude from a reading of the whole case that the court dismissed the complaint upon the *prima facie* case of the plaintiffs,

although it had admitted certain evidence and testimony offered by the defendants prior to the motion to dismiss, apparently to facilitate the convenience of a witness. We cannot hold that defendants had concluded their whole case.

We, therefore, direct that the judgment should be reversed and a new trial granted as to each cause of action, with costs to appellants to abide the event.

FINCH, P. J., MERRELL, MARTIN and SHERMAN, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.